```
                     UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
```

```
_____
                                :
UNITED STATES OF AMERICA        :
                                :    Crim. No. 07-00154 (NLH)
                                :
     v.                         :
                                :
CARLOS VALLEJO,                 :    OPINION
                                :
            Defendant           :
_____ :
```

**APPEARANCES**:

JULIE A. MCGRAIN
FEDERAL PUBLIC DEFENDER'S OFFICE
800 - 840 COOPER STREET
SUITE 350
CAMDEN, NJ 08102

   *Counsel for Carlos Vallejo*

DANIEL AARON FRIEDMAN
OFFICE OF THE U.S. ATTORNEY
401 MARKET STREET
P.O. BOX 1427
CAMDEN, NJ 08101

   *Counsel for the United States*

**Hillman**, **District Judge**

   Before the Court are Carlos Vallejo's ("Defendant") Motions for Reduction of Sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (ECF 229, 230, 232). For the reasons expressed below, the motions will be denied.

**Background**

On December 14, 2007, after five days of trial Defendant was convicted of three counts: 1) conspiracy to distribute and possess with intent to distribute cocaine, 2) distribution and possession with intent to distribute cocaine, and 3) distribution and possession with intent to distribute cocaine base in violation of 18 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B).  (ECF 159).  On October 15, 2008, the Court sentenced Defendant to a lifetime term of incarceration.[1]  (Id.) Defendant subsequently filed a petition under 28 U.S.C. § 2255 which ended in a negotiated resolution and a resentencing on August 23, 2018.  (See ECF 223).  At the 2018 resentencing, the Court decreased Defendant's sentence of lifetime imprisonment to 264 months of incarceration.  (Id.)

On June 19, 2020 and August 13, 2020, Defendant filed two pro se motions for a reduction in sentence based on the COVID-19 pandemic under §3582(c)(1)(A) of the First Step Act.[2]  (ECF 229, 230).  He followed up with a counseled motion on November 25,

---

[1] The Court also sentenced Defendant to three 10-year terms of supervised release to be served concurrently.  (Id.)

[2] Separately, on August 6, 2020, Defendant filed a pro se motion for a reduction in sentence under § 404 of the First Step Act of 2018.  (ECF 225).  He followed up with a counseled motion on April 28, 2020.  (ECF 227).  Those motions are not the subject of this Opinion and the Order filed herewith and will therefore be addressed separately in due course.

2020. (ECF 232). The Government filed a brief in opposition to the motions on December 28, 2020. (ECF 235). Thereafter, the parties filed several further letters stating their positions. (ECF 244-46). The Court considers the motions against this factual backdrop.

**Discussion**

**A. Legal Standard for Compassionate Release**

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)). Before bringing a motion for reduced sentence before the sentencing court, defendants first "must ask the Bureau of Prisons to do so on their behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals." Id. "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." United States v. Sellers, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(C)(1)(A)); see also Raia, 954 F.3d at 595.

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) if after finding

3

extraordinary and compelling reasons warrant a reduction, that such a reduction would be consistent with applicable policy statements issued by the Sentencing Commission and that the applicable sentencing factors under § 3553(a) warrant a reduction.  United States v. Pabon, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020).

### B. Analysis of Motions for Compassionate Release

#### a. Defendant has satisfied the exhaustion requirements

Defendant applied to the BOP for compassionate release on June 8, 2020 and was denied on June 10, 2020.  (ECF 235 at 34). The Government does not dispute that Defendant has exhausted his administrative remedies.  (Id.)  Thus, the Court deems the administrative exhaustion requirement for his motions to be satisfied.

#### b. Defendant fails to establish "extraordinary and compelling reasons" for his release

The Court holds that Defendant has not established "extraordinary and compelling reasons" for his release. Defendant argues that his pre-existing medical conditions place him at a high risk for complications from COVID-19. Specifically, Defendant argues that he is at an increased risk for an adverse outcome if he contracts COVID-19 due to his underlying health conditions.  (ECRF 232 at 1).  Defendant suffers from Hepatitis C, borderline portal hypertension, being

4

overweight, and has a history of smoking. (Id.) Defendant also argues that the fact that he is Hispanic puts him at an increased risk for suffering negative outcomes if he contracts COVID-19.[3] (Id. at 11).

The Government disagrees that Defendant presents "extraordinary and compelling reasons" for his release. (ECF 235 at 22). They argue that the conditions that Defendant has are insufficient to necessitate immediate release, even during the pandemic.[4] (Id.) More specifically, they argue that Defendant's medical records show that his conditions are being adequately managed by the BOP. (Id. at 22-23). The Government highlights that Defendant's cited medical conditions do not warrant the significant reduction in sentence that Defendant is requesting. (Id. at 22). Finally, they highlight the steps that the BOP has taken to manage the COVID-19 pandemic including

---

[3] Defendant seems to request that as an alternative to compassionate release, the Court order him to home confinement. (See ECF 229 at 2; ECF 230 at 22). The decision to designate an inmate to home confinement is uniquely entrusted to the BOP. Washington v. Warden Canaan USP, 858 F. App'x 35, 36 (3d Cir. 2021) ("[W]e agree with the District Court that whether to transfer an inmate to home confinement is a decision within the exclusive discretion of the BOP.").

[4] The Government notes that at points Defendant has met the "minimal threshold for obesity" which may be an "extraordinary and compelling reason" for release in theory but that it is not one here. (Id. at 34-35).

testing, social distancing, and designating qualifying inmates for home confinement.  (Id. at 23-29).

The Court does not take lightly the difficulties that Defendant's medical conditions place on him particularly while in prison.  But Defendant has not sufficiently shown how his particular medical conditions, either individually or in combination, pass the extraordinary and compelling threshold given BOP's efforts at minimizing the risk of transmission in the current environment.  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

The applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines.  U.S.S.G. § 1B1.13, cmt. n.1(A).[5]  The Court cannot say that

---

[5]  While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act.  That said, the Third Circuit has approved a district court's consideration of § 1B1.13 when it comes to evaluating motions for compassionate release filed by prisoners.  United States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021), cert. denied, No. 21-1208, 2022 WL 994375 (U.S. Apr. 4, 2022) ("The court correctly recognized that although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons.").

6

Defendant suffers from conditions that fall into the same categories as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[,]" examples offered by the Sentencing Commission of the types of illnesses that might constitute "extraordinary and compelling circumstances." Id.  It also cannot say that Defendant's conditions substantially "diminish[] the ability of [Defendant] to provide self-care within the environment of a correctional facility and from which he...is not expected to recover." Id.  Defendant has not shown that he cannot manage his medical conditions while incarcerated.  (See generally ECF 232).

While the Centers for Disease Control and Prevention have identified hepatitis, obesity,[6] smoker status, and hypertension as risk factors associated with COVID-19,[7] courts have held that the mere fact that a defendant has one or more of those conditions is not enough to warrant compassionate release. United States v. Brashear, 2021 WL 5239119, at *3 (D.N.J. Nov. 10, 2021) ("Despite the risk of COVID-19, multiple decisions in the Third Circuit, and multiple decisions in this District, have

---

[6] It appears that at different points Defendant has teetered between being overweight and obese.  (ECF 235 at 34-35).

[7] CENTERS FOR DISEASE CONTROL AND PREVENTION, COVID-19, PEOPLE WITH CERTAIN MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 10, 2022).

denied compassionate release to inmates suffering from obesity, hypertension, and/or other health issues."); United States v. Toney, No. CR 83-00017 (RBK), 2021 WL 1382154, at *2 (D.N.J. Apr. 12, 2021), appeal dismissed sub nom. USA v. Toney, No. 21-1823, 2021 WL 5080042 (3d Cir. June 23, 2021) (holding that diagnosis of Hepatitis C did not constitute an "extraordinary and compelling reason" justifying release); United States v. Caraballo, No. CR 14-0255, 2022 WL 60697, at *6 n.5 (D.N.J. Jan. 6, 2022) ("Defendant's status as a former cigarette smoker does not change the Court's conclusion that he fails to show any extraordinary and compelling reasons for a sentence reduction.").

There also is not any evidence that Defendant's race in and of itself makes him more susceptible to a negative outcome from COVID-19. United States v. Gatson, No. 13-CR-705 (WJM), 2021 WL 3879083, at *2 (D.N.J. Aug. 31, 2021), aff'd, No. 21-2749, 2021 WL 5632079 (3d Cir. Dec. 1, 2021) ("As to Defendant's argument that his race exacerbates his risk of severe illness, the Court, in line with others in this District, finds that it does not help him establish an extraordinary and compelling reason for release.").

Defendant appears to be fully vaccinated against COVID-19. (ECF 246 at 1). Further, FCI Fort Dix, where Defendant is housed, has mitigation efforts aimed at controlling the spread

of the coronavirus that appear to be effective.  Currently, FCI Fort Dix has no active inmate positive tests and four staff positive tests.[8]  Over the course of the pandemic, two inmates have died as a result of infection by COVID-19, and 1,428 inmates have recovered from positive infections.[9]

In addition, according to the BOP, 3,044 inmates at FCI Fort Dix have been fully vaccinated out of a population of 3,126.[10]  Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court believes that the vaccination rate inside FCI Fort Dix weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant, who currently seems to be managing his conditions effectively at FCI Fort Dix, does not present "extraordinary and compelling reasons" supporting his release.  The effective management of Defendant's conditions by the BOP and FCI Fort Dix's efforts at controlling the spread of COVID-19, taken together, undermine any finding that this Defendant presents "extraordinary and compelling reasons" for his release.

---

[8] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited August 10, 2022).

[9] Id.

[10] Id.; FEDERAL BUREAU OF PRISONS, FCI FORT DIX, https://www.bop.gov/locations/institutions/ftd/ (last visited August 10, 2022).

### c. 3553(a) factors weigh against Defendant's favor

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction.  Here, they do not.

The Court sees no reason to disturb the sentence it previously imposed.  Specifically, Defendant was involved in trafficking a significant amount of cocaine in a sophisticated scheme and trafficked cocaine repeatedly despite having been convicted of doing so more than once.  18 U.S.C. § 3553(a)(1); (ECF 231 at 41: 5-13).  Indeed, in imposing Defendant's sentences, the Court considered Defendant's repeated and escalating violations of the law, the quantity of drugs that had been trafficked, and the sophisticated nature of the conspiracy's operations.  18 U.S.C. § 3553(a)(2)(A); (ECF 231 at 40:19-24).

Deterrence, both specific and general, also militates against release given the magnitude of drugs at issue and the fact that Defendant has committed multiple offenses in the past. 18 U.S.C. § 3553(a)(2)(B); (ECF 231 at 40:24-41:4).  Defendant's repeated flouting of the law suggests that, despite Defendant's age of 49 years at the time of the writing of this Opinion, recidivism is still an active concern in this case and underscores the need to protect the public from further crimes

that he may commit.  18 U.S.C. § 3553(a)(2)(C); (ECF 231 at 41: 5-13).  The advent of COVID-19 does not change the balance in Defendant's specific situation where he has not shown that he is at a materially increased risk of serious illness or death while incarcerated and that there has been a material difference in the § 3553(a) factors that animated his current sentence.  Thus, the Court declines to grant Defendants motions for compassionate release on the basis of COVID-19.

**Conclusion**

For the reasons set forth above, Defendant's Motions for Reduction of Sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A) (ECF 229, 230, 232) will be denied.  An accompanying Order will issue.

Dated: August 10, 2022        s/   Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.

11