```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

_____     :
                                   :
UNITED STATES OF AMERICA           :
                                   :    Crim. No. 07-00154 (NLH)
                                   :
     v.                            :
                                   :
CARLOS VALLEJO,                    :    **OPINION**
                                   :
          Defendant                :
_____     :

**APPEARANCES**:

JULIE A. MCGRAIN
FEDERAL PUBLIC DEFENDER'S OFFICE
800 - 840 COOPER STREET
SUITE 350
CAMDEN, NJ 08102

     *Counsel for Carlos Vallejo*

DANIEL AARON FRIEDMAN
OFFICE OF THE U.S. ATTORNEY
401 MARKET STREET
P.O. BOX 1427
CAMDEN, NJ 08101

     *Counsel for the United States*

**Hillman**, **District Judge**

Currently before the Court are Carlos Vallejo's ("Defendant") Motions for Reduction of Sentence pursuant to § 404(b) of the First Step Act. (ECF 225, 227). For the reasons expressed below, the motions will be denied.

**Background**

On December 14, 2007, after five days of trial testimony, Defendant was convicted by a jury of three counts: 1) a dual object conspiracy to distribute and possess with intent to distribute more than 5 kilograms of powder cocaine and more than 50 grams of cocaine base in violation of 21 U.S.C. § 846 (Count 1); 2) distribution and possession with intent to distribute 5 kilograms or more of powder cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 3); and 3) distribution and possession with intent to distribute both 50 grams or more of cocaine base and 500 grams or more of powder cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B) (Count 4). (ECF 95, 114-2, 159).

On October 15, 2008, the Court sentenced Defendant to a lifetime term of incarceration on each of the three counts of conviction to run concurrently.[1] (Id.)  Defendant subsequently filed a petition under 28 U.S.C. § 2255 which ended in a

---

[1] Just prior to trial, the Government filed an Enhanced Penalty Information against the Defendant subjecting him, pursuant to 21 U.S.C. § 851(a)(1), to a mandatory term of life imprisonment if convicted on either the conspiracy count or any substantive count where the amount of controlled substance met or exceeded the amounts set for in 21 U.S.C. § 841(b)(1)(A).  (ECF 120). Using special interrogatories the jury found the requisite amounts beyond a reasonable amount on all three counts of conviction resulting in concurrent mandatory life sentences on all three counts.  The Court also sentenced Defendant to three 10-year terms of supervised release to be served concurrently. (Id.)

2

negotiated resolution between the Government and the Defendant and a resentencing on August 23, 2018.  (See ECF 223).  At the 2018 resentencing, the Court decreased Defendant's sentence of lifetime imprisonment to 264 months of incarceration on each of the three counts to run concurrently.  (Id.)

On August 3, 2010, between the time of Defendant's initial sentencing in 2008 and his resentencing in 2018, the Fair Sentencing Act (the "FSA") was enacted to reduce the disparity between statutory penalties for trafficking crack cocaine and powder cocaine.  Pub. L. No. 111-220, 124 Stat 2372 (2010).  The FSA also raised the drug quantities required to trigger certain minimum penalties pursuant to 21 U.S.C. § 841, the statute under which Defendant was convicted. See United States v. Ferrer, 859 F. App'x 648, 649 (3d Cir. 2021) ("The Fair Sentencing Act raised the drug-quantity thresholds needed to trigger certain mandatory-minimum sentences.").  The provisions of the FSA were later made retroactive on December 21, 2018 with the passage of § 404 of the First Step Act ("First Step Act"). Pub. L. No. 115-391, 132 Stat. 5194 (2018); Concepcion v. United States, 213 L. Ed. 2d 731, 142 S. Ct. 2389, 2397 (2022).

On August 6, 2020, Defendant filed a pro se motion for a reduction in sentence under § 404.  (ECF 225).  He followed up with a counseled motion on April 28, 2020.  (ECF 227).  The Government filed a brief in opposition to the motions on

December 28, 2020. (ECF 235). Thereafter, the parties filed several additional letters stating their positions on the motion based on intervening facts and changes in Department of Justice policy. (ECF 240-246, 249). Of note, the Government conceded that Defendant was convicted of a "covered offense," thus falling within the purview of § 404. (ECF 244).

Then, on June 27, 2022, the Supreme Court issued an opinion in Concepcion v. United States, 213 L. Ed. 2d 731, 142 S. Ct. 2389, 2397 (2022) in which the Court held that a court resentencing a defendant pursuant to retroactive application of the FSA should first calculate the Federal Sentencing Guidelines (the "Guidelines") with the only difference "to reflect the retroactive application of the Fair Sentencing Act." Id. at 2402 n.6. The Supreme Court further directed that once a sentencing court recalculates the Guidelines, it may "then consider postsentencing conduct or nonretroactive changes in selecting or rejecting an appropriate sentence, with the properly calculated Guidelines range as the benchmark." Id.

In light of that holding, on June 28, 2022, this Court issued an order requiring the United States Probation Office ("Probation") to prepare an addendum to Defendant's pre-sentence report consistent with Concepcion. (ECF 253). The Court also ordered the parties to file further briefing once Probation submitted its addendum to advise the Court on their respective

4

positions on how the Court should resolve Defendant's motions. (Id.)

On September 22, 2022, Probation filed its addendum, which calculated Defendant's Guidelines range for any resentencing the Court might impose now to be the same as it was at the time of his resentencing in 2018.  (ECF 257 at 74 ("Having undertaken these analyses, the Probation Office submits that the guideline range as determined in the 2018 revised presentence report remains intact. We are aware of no change in law or the guidelines which would alter the guideline range as contained in the 2018 report.")).  Stated differently, Probation concluded that Defendant's advisory Guidelines did not change as a result the First Step Act's authorization to apply the FSA retroactively.  Thereafter, on September 27, 2022 and October 3, 2022, respectively, the Government and Defendant filed letters expounding on their positions.  (ECF 258, 259).  The Court considers the motions against this procedural backdrop.

**Discussion**

**A. Legal Standard for Reduction of Sentence Per the First Step Act**

A court that has sentenced a defendant for a "covered offense" prior to the enactment of the FSA may resentence a Defendant in accordance with the FSA's penalty changes by virtue of § 404 of the First Step Act.  See United States v. Easter,

5

975 F.3d 318, 323 (3d Cir. 2020) (abrogated on other grounds by Concepcion, 142 S.Ct. 2398 n.2) (discussing motions made under § 404(b)). If the Court determines that a defendant is eligible for relief under the First Step Act, the Court must then also analyze such a motion under the sentencing factors set forth in 18 U.S.C. § 3553(a). Id. at 326 ("Accordingly, we hold that when deciding whether to exercise its discretion under § 404(b) of the First Step Act to reduce a defendant's sentence, including the term of supervised release, the district court must consider all of the § 3553(a) factors to the extent they are applicable.").

A court may only consider changes in facts that go to the § 3553(a) factors that were not in play at the time of original sentencing. United States v. Murphy, 998 F.3d 549, 555 (3d Cir. 2021), as amended (Aug. 4, 2021) (abrogated on other grounds by Concepcion, 142 S.Ct. 2398 n.2) ("This new assessment must include any new, relevant facts that did not exist, or could not reasonably have been known by the parties, at the time of the first sentencing (*e.g.*, a defendant's post-sentencing rehabilitation or new health problems). This is because, a § 404 motion is not a license for a district court to reassess its original sentencing determinations. Id. ("[T]he resentencing court cannot reach beyond [facts that could not have been known

6

at the original sentencing or post-sentencing developments] to reconsider the facts as they stood at the initial sentencing.").

In going about this analysis using the above standard, a sentencing court has a wide range of discretion to consider post-sentencing circumstances and "[t]he only limitations on a court's discretion to consider any relevant materials . . . in modifying that sentence are those set forth by Congress in a statute or by the Constitution." Concepcion, 142 S. Ct. at 2400. In the case of the First Step Act, no additional limitations are in play. Id. at 2402 ("Section 404(b) does not erect any additional such limitations. The term 'as if' simply enacts the First Step Act's central goal: to make retroactive the changes in the Fair Sentencing Act."). By the same token, a district court also is not required to modify a sentence even if it is empowered to do so under the First Step Act. Id. ("In fact, § 404(c) only underscores that a district court is not required to modify a sentence for any reason.").

In sum, the process for determining whether a defendant should receive a sentence reduction under the First Step Act contains two steps. United States v. Shields, 48 F.4th 183, 192 (3d Cir. 2022). First, "the District Court should start with the benchmark Guidelines range recalculated only to the extent it adjusts for the Fair Sentencing Act[.]" Id. Then, the sentencing court may consider other post-sentencing developments

7

that warrant consideration. Id.; Concepcion, 142 S. Ct. at 2402 n.6. ("The district court may then consider postsentencing conduct or nonretroactive changes in selecting or rejecting an appropriate sentence, with the properly calculated Guidelines range as the benchmark.").

B. **Analysis of Motion to Reduce Sentence Per the First Step Act**

The parties agree that Defendant's conviction for a multi-object drug offenses involving both crack and powder cocaine are "covered offenses" for purposes of § 404(b).[2] (ECF 227, 244). However, the Government advances three arguments as to why this Court may not consider Defendant for a reduced sentence notwithstanding the fact that he was convicted of a "covered offense."[3] (ECF 258 at 2-3). First, they argue that when

---

[2] In its September 27, 2022 letter, the Government clarified that that this concession that Defendant was convicted of a "covered offense" did not mean that they conceded that he was eligible for relief. (ECF 258).

[3] The Third Circuit has not yet spoken on whether a defendant sentenced for a dual object conspiracy, such as conspiracy to possess with intent to distribute both powder cocaine and crack cocaine, is eligible for a reduction of sentence under the FSA where the sentence originally imposed would be consistent with a sentence imposed today when taking into the consideration the current guidelines for powder cocaine. However, the Circuits that have opined on the issue of eligibility of defendants convicted of dual object conspiracies have held that such a defendant would be eligible for a reduction of sentence under the FSA. See United States v. Gravatt, 953 F.3d 258 (4th Cir. 2020); United States v. Taylor, 982 F.3d 1295, 1301 (11th Cir. 2020); United States v. Winters, 986 F.3d 942 (5th Cir. 2021); United States v. Spencer, 998 F.3d 843 (8th Cir.), cert.

Defendant stipulated to a resentencing in 2018, he waived his right to file any appeal or collateral attack on that sentence. (See ECF 258 at 2).  Second, they argue that one of the counts in Defendant's judgment of conviction is not a "covered offense" and by virtue of that conviction Defendant "would have been subject to the same maximum penalty and the same Guidelines range even if he would be eligible for relief on the other counts of conviction." (Id.)  Third, they argue a point unresolved in this Circuit, that is whether § 404(c) of the First Step Act bars Defendant from consideration because he was last sentenced in 2018 and that sentence imposed penalties consistent with the FSA.  (Id.)

With respect to the Government's first argument, the Court rejects the argument that Defendant waived his right to attack his 2018 sentence with respect to the FSA because Defendant signed the waiver in question before the enactment of the First Step Act.  (See ECF 259 at 1).  In order to make a knowing and intelligent waiver of a right, that right must be known. United States v. Brown, No. 21-1754, 2021 WL 3356946, at *2 (3d Cir.

---

denied, 141 S. Ct. 2715, 210 L. Ed. 2d 878 (2021); United States v. Reed, 7 F.4th 105 (2d Cir. 2021); United States v. McSwain, 25 F.4th 533 (7th Cir. 2022).  The Court notes, but does not decide, that by this logic Count 4, which alleged a substantive offense of possession with intent to distribute both cocaine base and powder cocaine, would also qualify as a "covered offense."

9

Aug. 3, 2021) ("A defendant can only waive rights of which he is aware."). In an analogous context, one panel of the Third Circuit noted that it would not make sense to say that a defendant knowingly waived a right to move for compassionate release when he waived his appeal rights prior to the FSA's 2018 amendment that allowed a defendant to do so. Id.

Multiple courts, when confronted with the question that this Court now faces, have held that a defendant who waived his rights to collaterally attack his sentence prior to the enactment of the First Step Act could not have knowingly and intelligently waived a right to move for a sentence reduction on the basis of the FSA's retroactive amendments. United States v. Ellerby, No. CR CCB-07-064, 2020 WL 2395619, at *2 (D. Md. May 12, 2020) ("A waiver of his right to file 'any future post-conviction motions,' then, could not have been 'knowing' with respect to his rights under the First Step Act."); United States v. Johnson, No. CR06-4031-LTS, 2019 WL 3938472, at *10 (N.D. Iowa Aug. 20, 2019) ("In this case, defendant's appeal waiver does not explicitly contemplate a sentence reduction pursuant to a statutory change in the sentencing range. Accordingly, I agree with defendant that he did not knowingly waive his right to apply for a sentence reduction pursuant to the First Step Act."). Defendant was resentenced in August 2018, prior to the enactment of the First Step Act in December 2018.  (ECF 223);

10

Pub. L. No. 115-391, 132 Stat. 5194 (2018).  He cannot be said to have knowingly waived a right that did not yet exist.

Second, the Government's argument that Defendant would be subject to the same Guidelines range now because of the presence of a non-covered offense does not per se mean that Defendant is ineligible for consideration here.  Where a sentence results from "interdependent" counts, the sentences may not be treated discretely.  See United States v. Davis, 112 F.3d 118, 121 (3d Cir. 1997).  Indeed, there are holdings by panels in the Third Circuit that the "sentencing package doctrine" allows a district court to de novo reconsider an entire sentencing plan where part of a sentence was overturned.[4]  United States v. Fumo, 513 F. App'x 215, 218 (3d Cir. 2013); United States v. Brown, 385 F. App'x 147, 148 (3d Cir. 2010).  While this case law is not directly on point, its logic suggests that the presence of a non-covered offense in the sentencing mix is not a per se bar to

---

[4]  To be clear, in a 2021 precedential opinion, the Third Circuit made clear that it had only endorsed in its precedential opinions the "sentencing package doctrine" to vacated convictions and had not opined on its application to vacated sentences.  United States v. Grant, 9 F.4th 186, 200 (3d Cir. 2021).  Nevertheless, the Third Circuit did not disavow the approach taken in non-precedential opinions to apply the doctrine to vacated sentences, but rather noted that it had not adopted it as law of the Circuit.  Id. at 200 n.6.  Thus, it determined that one district court's determination not to apply the doctrine to a vacated sentence could not be deemed plain error.  Id. at 200.  It does not follow from that analysis that a district court may not apply the doctrine where a sentence on one count is vacated.

11

a § 404(b) motion.  Accordingly, the Court will decline to deny that the motion on that basis.

The Government's third argument, that Defendant already received the benefit of the FSA at the resentencing and is thus not eligible for further resentencing under the plain language of the First Step Act, is more compelling because at Defendant's 2018 resentencing he effectively received the benefit of the 2010 changes even though the reduction was not tied specifically to the FSA's amendments.  (See ECF 223).  They argue that since Defendant was resentenced in 2018, albeit in connection with his § 2255 petition and not § 404(b), he already received the benefit of the FSA.  (ECF 235 at 13-14).

The Government aptly notes that there appears to be a Circuit split on this position and that the Third Circuit has yet to opine on this precise issue.  (Id.).  Those circuits which have opined on this issue are split. Compare United States v. Hinds, 713 F.3d 1303, 1305 (11th Cir. 2013) (holding that the FSA applies to a defendant originally sentenced before the passage of the FSA but resentenced afterward); United States v. Alston, 722 F.3d 603, 608 (4th Cir. 2013) (same); with United States v. Hughes, 733 F.3d 642, 647 (6th Cir. 2013) (holding that the FSA does not apply to a defendant originally sentenced before the passage of the FSA but resentenced afterward).  In any case, the Government posits, since Probation used the

12

November 1, 2016 edition of the Guideline in calculating the advisory range at the time of Defendant's 2018 resentencing, that sentence of 264 months of incarceration is in line with the sentences imposed for other defendants first sentenced for the same offenses after the effective date of the FSA. (ECF 235 at 15; 257 at 47 (noting that the November 1, 2016 edition of the Guidelines manual was used for Defendant's 2018 resentencing)).

Section 404(c) of the First Step Act states that "No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010." Pub. L. No. 115-391, 132 Stat. 5194 (2018). The question here is how to interpret "in accordance with." The Fourth Circuit has construed "in accordance with" to simply mean "consistent" rather than something like "pursuant to." United States v. Goodwin, 37 F.4th 948, 954 (4th Cir. 2022) ("Accordingly, we find that Goodwin's sentence 'was previously imposed ... in accordance' with the relevant provisions of the Fair Sentencing Act and that § 404(c) of the First Step Act therefore renders him ineligible for relief."). As stated above, the Third Circuit has yet to opine on this issue directly, but this Court finds the Fourth Circuit's reasoning persuasive and adopts its reasoning here. The plain language of the statute compels the conclusion that

13

the § 404(c) seeks to bar not only those cases seeking a reduction after a sentence previously reduced under the First Step Act but also those cases in which the sentencing court utilized the amended guidelines put into place after the FSA was passed.  That is to say that the statutory language of § 404(c) appears to act as a bar for both types of "second bites at the apple": those cases originally sentenced using pre-FSA guidelines who previously moved and were considered for relief under § 404(b) and those cases sentenced after the guidelines were amended in response to the FSA.

It is only this interpretation that gives separate meaning to the separate phrases "previously imposed or previously reduced[.]"  United States v. Cooper, 396 F.3d 308, 312 (3d Cir. 2005), as amended (Feb. 15, 2005)(emphasis added)("It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous.").  This interpretation also prohibits unwarranted sentencing disparity, a key goal of the sentencing statute, 18 U.S.C. § 3553(g), by ensuring that defendants sentenced both before and after the FSA are considered under like guidelines.  This consistency appears to be the apparent statutory goal § 404(b) of the First Step Act to eliminate the disparity caused by the FSA's initial lack of retroactivity.  Accordingly, this Court holds that since the

14

Defendant was resentenced after the Court considered guidelines that reflected the reforms of the FSA, he is barred from further relief under the plain language of § 404(c) of the First Step Act.

The Court hastens to add that if its interpretation of § 404(c) is in error, however, it would exercise its discretion to deny Defendant relief after consideration of the 3553(a) factors. As explained above, the Court weighs the factors as they stand today, but does not "reach beyond those circumstances to reconsider the facts as they stood at the initial sentencing." Id. Defendant's offense of conviction is just as serious today as it was at the time he was sentenced. 18 U.S.C. § 3553(a)(1). Defendant argues that a reduction is appropriate to accord with the principle that a sentence should be sufficient but not greater than necessary. (ECF 227 at 10-11). But that argument does not raise some new fact cognizable under a renewed § 3553(a) analysis. Defendant also argues that since his initial sentencing, he has now "accepted full responsibility for his participating in the drug trafficking organization." (Id. at 11). He further contends that his conduct in prison since his first sentencing shows a commitment to reform. (Id.) Finally, Defendant contends that deterrence and public safety should not now weigh against his release where he is in his mid-

15

forties and studies show that he is at a reduced risk of recidivism. (Id. at 11-13).

The Government disagrees. Regarding the § 3553(a) factors the Government urges the Court to consider the seriousness of Defendant's underlying offenses and his history of recidivism. (ECF 235 at 20). They also note that a further reduction beyond 264 months of incarceration would result in unwarranted disparities with similarly situated defendants. (Id. at 22).

Looking at the § 3553(a) factors today, the Court holds that a further reduction in sentence would be inappropriate. The Court agrees with the Government that a further sentence reduction would result in a disparity with similarly situated defendants. 18 U.S.C. § 3553(a)(6). This is because the recalculated Guidelines that Probation submitted on September 22, 2022 do not show any change in the advisory Guidelines range since the Guidelines range that the Court used in 2018 which accounted for the FSA.[5] (ECF 257). Defendant is in essence

---

[5] In order to have the fullest picture of what sentence might be appropriate if Defendant were sentenced today, the Court's June 28, 2022 Order asked Probation to consider other changes besides the passage of the First Step Act that would bear on a potential resentencing. (ECF 253). Since that Order, the Third Circuit's decision in Shields clarified footnote 6 of Concepcion and said that the Guidelines should only be recalculated to account for the First Step Act. Shields, 48 F.4th at 192. The Court finds no issue here, though, because the addendum prepared by Probation specifically focused on any changes occasioned by the passage of the First Step Act and there were no other changes to consider. (See ECF 257).

16

asking for a sentence lower than those received by similarly situated defendants sentenced after 2010 for roughly the same amounts and types of drugs. The record reflects no justification for such a reduction other than simply reexamining the wisdom of the Court's 2018 sentencing determinations.

In addition, the fact that Defendant has worked on acknowledging the seriousness of his offense and taken rehabilitative steps since he was originally sentenced does not change the seriousness of the offense at the time it was committed. Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222; 18 U.S.C. §3553(a)(1), (a)(2)(A). As noted, Defendant was convicted for his role as a "central figure" in a far-ranging and sophisticated drug trafficking organization that imported high potency drugs into New Jersey from the Southwest border using vehicles with sophisticated hidden compartments. The Defendant trafficked in both powder and crack cocaine and in significant volumes over time earning substantial amounts of ill-gotten gains. (See e.g. ECF 257 at 7-10, 37-39). Over $160,000 in cash found in a hidden compartment was seized from his residence when he was arrested. (ECF 257 at 36).

And Defendant joined the conspiracy after two prior convictions for essentially the same conduct. (ECF 257 at 53-55). The Government viewed Defendant's history and activities so concerning that they exercised their discretion to file the

17

Information necessary to invoke the statutory three-strike provision of 21 U.S.C. § 851 and seek a sentence of life in prison. Although the Government eventually backed away from that position in response to Defendant's federal habeas petition, the negotiated resentencing of 22 years reflected the seriousness of Defendant's underlying conduct. While the Court certainly finds Defendant's rehabilitation efforts laudable, on this record they are not extraordinary enough to disturb Defendant's current sentence. See United States v. Foster, No. 109CR00013MRWCM7, 2020 WL 6689345, at *4 (W.D.N.C. Nov. 12, 2020) ("[W]hile incarcerated [the defendant] has completed an impressive number of work assignments and educational programs, including earning her GED. While the Defendant's conduct while in BOP is laudable, this factor does not outweigh the seriousness of her offense conduct or the other relevant § 3553(a) factors that weigh in favor of her continued incarceration.") (internal citations omitted).

Defendant has not otherwise proffered any reasons why his crime should be viewed less seriously than at the time of his original sentencing. Defendant may be statistically correct that recidivism tends to decrease with age and that Defendant has aged since he was originally sentenced. However, the fact that Defendant would age over the course of his sentence was known to the Court when it originally sentenced him. See United

18

States v. Barlow, 544 F. Supp. 3d 491, 500(D.N.J. 2021), aff'd, No. 21-2267,2022 WL 820462 (3d Cir. Mar. 18, 2022) ("To begin, the First Step Act is not a 'let's start all over.'").  Even assuming that Defendant could be considered for relief under the First Step Act, this Court would exercise its discretion to deny such relief as the § 3553(a) factors counsel against further reduction of Defendant's sentence.

**Conclusion**

For the reasons set forth above, Defendant's Motions for Reduction of Sentence pursuant to § 404(b) of the First Step Act will denied.  (ECF 225, 227).

An accompanying Order will issue.


Dated: November 8, 2022         s/   Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.